UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEROME WALKER,

Plaintiff,

v.                                                    Case No. 25-cv-1770-pp

WISCONSIN DEPARTMENT OF CORRECTIONS, *et al.*,

Defendants.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

---

Plaintiff Jerome Walker, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

### I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On December 1, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $50.63. Dkt. No. 6. The court received that fee on December 23, 2025. The plaintiff since has paid the balance of the filing fee, dkt. no. 7, and the court will grant his motion for leave to proceed without prepaying the filing fee.

## II.     Screening the Complaint

### A.      Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

2

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff has sued the Wisconsin Department of Corrections (DOC); Green Bay Correctional Institution Warden Christopher Stevens; Deputy Warden Michelle R. Haese; CPS Koeler; Alan DeGroot, institution complaint examiner; and Charles Brown, Green Bay ADA coordinator. Dkt. No. 1 at 1. The plaintiff states that the complaint raises two issues: "1. The defendant(s) failed to accommodate [the plaintiff's] disabilities in the education program/setting which violates Americans with Disabilities Act. 2. The defendant(s) caused deliberate indifference by excluding [the plaintiff] from

participating in his education due to noncompliance of ADA accommodation. Such deliberate indifference is also discrimination." Id.

The plaintiff alleges that from 2021 through 2024, he tried to obtain "ADA accommodations" at Green Bay Correctional Institution due to "learning disability and medical issues." Id. He says that the accommodations he requested included "a reading device, a daily tutor, a change of rules regarding bathroom breaks due to his diabetes and medical issues, and a change of rules regarding lay-ins/sick calls due to medical issues." Id.

The plaintiff alleges that the DOC is liable for the ADA violation. Id. at 2. He states that the defendants violated his rights under the ADA by not accommodating his learning and medical disabilities within the education setting and by excluding him from participating in educational services. Id. The plaintiff asserts that excluding him from educational services amounted to intentional discrimination and deliberate indifference in violation of the Eighth Amendment. Id. He contends that the defendants should have held an "IEP hearing" to accommodate his educational and medical needs/disabilities to provide him with the best educational services as possible at Green Bay. Id. at 2-3. Instead, the defendants allegedly excluded the plaintiff from participating in educational services. Id. at 3.

The plaintiff states that based on inmate complaints he submitted, Warden Stevens knew that he did not obtain the accommodation he requested. Id. He also states that Attorney Gary George sent a letter to Warden Stevens letting him know about the plaintiff's disabilities and ADA noncompliance, but

that Stevens did not respond to the letter. Id. The plaintiff states that Stevens knew that the plaintiff was excluded from educational services and that Stevens's deliberate indifference caused the plaintiff "educational and psychological harm." Id. at 3-4. Stevens allegedly did not hold an IEP hearing to attempt to resolve the ADA issues. Id. at 4. The plaintiff states that exclusion from educational services affected his "institution pay, the attempt to obtain a specialized reading device [], obtaining an attorney as well as its costs to communicate on his behalf to Christoper Stevens, paperwork as well as copying cost, litigation costs and psychological damage of being excluded as well as all costs associated." Id. at 4-5.

The plaintiff alleges that based on inmate complaints he submitted, Deputy Warden Haese knew about the plaintiff not obtaining the accommodations he had requested. Id. at 5. On April 11, 2023, Haese allegedly responded to the plaintiff with a letter but did not try to find a solution to accommodate his disabilities. Id. The plaintiff states that he was excluded from educational services and that Haese knew it and did not try to address it by holding an IEP hearing to discuss accommodating his disability. Id. Haese allegedly had every opportunity to prevent the plaintiff from being excluded from educational services. Id. Haese allegedly discriminated against the plaintiff because she did not try to address the ADA issues. Id. at 5-6.

The plaintiff alleges that because of his complaints and because defendant Koeler acknowledged the plaintiff's ADA requests in a response dated February 15, 2021, Koeler knew about the plaintiff not obtaining the requested

accommodation. Id. at 6. Koeler allegedly did not try to find a solution to accommodate the plaintiff's disability. Id. The plaintiff alleges that Koeler did not hold a hearing to try to resolve the ADA issues or the plaintiff's exclusion from educational services. Id. at 7.

The plaintiff alleges that defendant DeGroot knew about the plaintiff not obtaining the requested accommodation and acknowledged the plaintiff's ADA requests as complaint examiner. Id. at 7-8. DeGroot allegedly did not try to find a solution to accommodate the plaintiff. Id. at 8. The plaintiff states that DeGroot had opportunities to find a solution but failed to do so. Id.

The plaintiff alleges that Charles Brown, Green Bay's ADA coordinator, allowed the plaintiff to be excluded from education services. Id. at 8-9. The plaintiff says that due to his complaints and because Brown acknowledged and denied the plaintiff's ADA requests, Brown allegedly knew about the plaintiff not obtaining the requested accommodation. Id. at 9. Brown allegedly did not try to find a solution to accommodate the plaintiff's disability. Id. The plaintiff states that Brown had opportunities to suggest an IEP hearing to discuss accommodation and failed to do so. Id.

The plaintiff seeks monetary damages and injunctive relief. Id. at 10.

C.    Analysis

To state a claim under Title II of the Americans with Disabilities Act, the plaintiff must plead facts suggesting that he is a "qualified individual with a disability" who "by reason of such disability" was "denied the benefits of the services, programs, or activities of a public entity." Shaw v. Kemper, 52 F.4th

6

331, 334 (7th Cir. 2022) (quoting 42 U.S.C. §12132). The proper defendant in an ADA claim is the "public entity" itself or an individual in his or her official capacity. Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds); Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 670 n.2 (7th Cir. 2012). An incarcerated individual may not sue defendants in their individual capacities under the ADA. Walker, 213 F.3d at 346 ; see also Boston v. Dart, Case No. 14 CV 8680, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (citing Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303, 783 F.3d 624, 644 (7th Cir. 2015)).

The plaintiff alleges that because of the defendants' refusal to provide accommodations for his learning disability and "medical issues", he could not participate in educational services at Green Bay. Based on these allegations, the plaintiff may proceed with an ADA claim for monetary damages and injunctive relief against defendant Charles Brown for allegedly denying his request for reasonable accommodation at Green Bay. The plaintiff's ADA claims against the rest of the defendants cannot proceed because they are either improper or redundant. He cannot sue any of the other defendants in their "personal" capacities under the ADA. Walker, 213 F.3d at 346. And any claims against the other defendants in their "official" capacities would be duplicative of the claim against Brown, as would a claim against the DOC. See, e.g., Purnell v. Hohmer, Case No. 20-CV-640, 2021 WL 662232, at *2 (S.D. Ill. Feb. 19, 2021); McDaniel v. Wis. Dep't of Corr., Case No. 20-CV-1919, 2021 WL 1515482, at *3 (E.D. Wis. Apr. 16, 2021).

7

The plaintiff also alleges that the defendants violated his rights under the Eighth Amendment by denying him access to educational services at Green Bay. To state a claim under the Eighth Amendment, the plaintiff must allege (1) that he suffered from an objectively serious risk of harm; and (2) that the defendants were subjectively deliberately indifferent to it. See Farmer v. Brennan, 511 U.S. 832, 834 (1994). But "[t]here is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that give rise to a violation of the Eighth Amendment." Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982). Failure to provide vocational and educational training "does not violate the Constitution in the absence of grievously debilitating prison conditions." Madyun v. Thompson, 657 F.2d 868, 874 (7th Cir. 1981) (citations omitted). "While inmates do not have a constitutional right to such programs, they are entitled to an environment that does not threaten their mental and physical well-being." Id. In addition, the mere offering of an education program does not create a liberty interest in those programs because the removal of the programs would not "impose atypical and significant hardship on a prisoner in relation to ordinary prison life," and therefore would not violate the Due Process Clause of the Fourteenth Amendment. Jones v. Litscher, Case No. 16-CV-1303, 2017 WL 1323433, at *3 (E.D. Wis. Apr. 10, 2017) (quoting Martinoski v. Wis. Dep't of Corr., 896 F. Supp. 882, 884 (E.D. Wis. 1995)). The plaintiff has not stated a claim for violation of his constitutional rights based on the alleged inability to attend educational services at Green Bay.

8

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DISMISSES** defendants Wisconsin Department of Corrections, Christopher Stevens, Michelle Haese, CPS Koeler and Alan DeGroot.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Charles Brown. Under the informal service agreement, the court **ORDERS** defendant Brown to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

9

362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 6th day of July, 2026.

BY THE COURT:

_____

HON. PAMELA PEPPER
Chief United States District Judge

10